**Aleks GEGAJ, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General,[1] Respondent.**

No. 07–0524–ag.

United States Court of Appeals, Second Circuit.

March 18, 2008.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto Gonzales as the respondent in this case.

Aleks Gegaj, Pro Se, Bronx, New York-for Petitioner.

Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, Barry J. Pettinato, Assistant Director, Katharine E. Clark, Trial Attorney, Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., for Respondents.

PRESENT: Hon. CHESTER J. STRAUB, Hon. REENA RAGGI, Hon. DEBRA ANN LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Aleks Gegaj, a native and citizen of Albania, seeks review of a January 19, 2007 order of the BIA affirming the October 25, 2004 decision of Immigration Judge ("IJ") Noel Ann Brennan denying his application for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. *In re Aleks Gegaj,* No. A79 305 456 (B.I.A. Jan. 19, 2007), *aff'g* No. A79 305 456 (Immig. Ct. N.Y. City Oct. 25, 2004). We assume the parties' familiarity with the underlying facts and procedural history of the case.[2]

When the BIA adopts the decision of the IJ and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA. *See Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Manzur v. U.S. Dep't of Homeland Sec.,* 494 F.3d 281, 289 (2d Cir.2007). However, we will vacate and remand for new findings if the agency's reasoning or its fact-finding process was sufficiently flawed. *See Cao He Lin v. U.S. Dep't. of Justice,* 428 F.3d 391, 406 (2d Cir.2005).

---

**2.** We find unavailing Gegaj's argument that the manner in which the IJ conducted his hearing prejudiced the outcome of his case. As the BIA found, while the IJ did question Gegaj and his witnesses "extensively" throughout the course of his hearings, the record does not indicate that Gegaj was denied a full and fair hearing or that the IJ's questioning went beyond the scope of her duty to develop the record. *See* 8 U.S.C. § 1229a(b)(1); *see also Islam v. Gonzales,* 469 F.3d 53, 55 (2d Cir.2006).

## I. Asylum

Title 8, Section 1158(a)(3) of the United States Code provides that no court shall have jurisdiction to review the agency's finding that an asylum applicant has failed to show by clear and convincing evidence that his asylum application was filed within one year of his arrival pursuant to 8 U.S.C. § 1158(a)(2)(B), or its finding that an applicant failed to show either changed or extraordinary circumstances excusing the untimeliness under 8 U.S.C. § 1158(a)(2)(D). 8 U.S.C. § 1158(a)(3). Notwithstanding that provision, however, this Court retains jurisdiction to review constitutional claims and "questions of law." 8 U.S.C. § 1252(a)(2)(D). Because Gegaj's challenge to the IJ's pretermission of his asylum application raises a question of law, namely, that the IJ "applied an inappropriately high and arbitrarily determined evidentiary standard" in determining that he failed to establish his date of entry to the United States, we conclude that we have jurisdiction to review that argument. *See Ilyas Khan v. Gonzales,* 495 F.3d 31, 35 (2d Cir.2007); *Gui Yin Liu v. INS,* 508 F.3d 716, 721 (2d Cir.2007). Nevertheless, we conclude that Gegaj's argument is unavailing.

As the BIA properly found, the inconsistencies in the testimonies of Gegaj and his witnesses provided ample support for the IJ's finding. Both the BIA and the IJ noted that Gegaj testified inconsistently about when his brother came to pick him up. In addition, the IJ noted that Pal's description of where he picked up Gegaj was inconsistent with the affidavit that he submitted. The IJ also properly noted that Pal's testimony that he and Gegaj drove directly to his apartment from Michigan was inconsistent with the testimony of Gegaj and Lena, who both asserted that they drove to his uncle's home first. Moreover, the IJ provided Gegaj the op-portunity to rehabilitate the inconsistent testimony and asked him to produce evidence to corroborate his date of entry. Because the IJ believed that the records would "go a long way to resolving this in favor of the respondent," she adjourned Gegaj's hearing to a later date so that he could obtain them. However, as the IJ noted, Gegaj was unable to submit the requested documents, nor did he submit any other corroboration of his date of entry, namely, "plane tickets, a boarding pass, gas, or food receipts." In light of the foregoing, we cannot find that the IJ applied a more stringent standard than the "clear and convincing" standard set forth in 8 U.S.C. § 1158(a)(2)(B). Accordingly, Gegaj's argument is without merit, and we leave undisturbed the IJ's pretermission of Gegaj's asylum application.

## II. Withholding of Removal and CAT Relief

We further conclude that substantial evidence supports the agency's finding that Gegaj was not credible, as the IJ properly relied on omissions in the record that involve material aspects of his claim of persecution. *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003). The IJ properly found that while Gegaj testified that he was arrested and detained for three days in March 1991, his amended affidavit omitted that assertion. While Gegaj tried to explain that he had been "very, very nervous and very upset" when he was preparing the document, the IJ properly declined to credit that explanation. *See Majidi v. Gonzales,* 430 F.3d 77, 80–81 (2d Cir.2005).

In addition, the BIA and IJ also properly found that while Gegaj testified that he was arrested "maybe twenty times a year" between 1991 and 1997, his amended asylum application and affidavit did not assert that he was arrested at all. Moreover, the

IJ properly found that Gegaj was unable to provide details regarding his "20 arrests," and was unable to recall specific incidents aside from the March 1991 arrest. As the IJ properly found, Gegaj's failure to provide details about his alleged arrests, in addition to the omissions from his amended affidavit, go to the heart of his claim that he has been persecuted in the past, as they reasonably led the IJ to conclude that "none of these 20 arrests happened." *See Secaida–Rosales,* 331 F.3d at 307. Accordingly, they provide support for the IJ's adverse credibility determination.

Because of the inconsistencies identified above, it was reasonable for the IJ to require corroboration of Gegaj's claims so that he might rehabilitate his questionable credibility. *See Diallo v. INS,* 232 F.3d 279, 290 (2d Cir.2000). However, the IJ found that Gegaj failed to submit a copy of his Democratic Party ("DP") membership card, an affidavit from his cousin, medical records detailing his treatment for a bullet wound, or a copy of an arrest record, and was unable to explain the absence of these documents. The IJ also did not err in declining to credit the affidavit of Gegaj's father because it did not mention that the authorities searched for Gegaj at his family home, as he testified. Indeed, none of the documents that Gegaj submitted provide any support for his assertions that he had been active in the DP, that he had been arrested for his DP activity, or that he had been shot by a Socialist Party ("SP") supporter. Thus, Gegaj's failure to corroborate his claim provided further support for the IJ's adverse credibility determination. *See Diallo,* 232 F.3d at 290.

In addition, the IJ also found that Gegaj was "vague or non-responsive" at several points in his testimony. For example, the IJ found that when asked for the details of his "20 arrests," he said that he could not remember any of the dates, "simply repeating non-responsively that he participated in all Democratic Party activities when asked by the Court or the Government counsel for specifics on the 20 arrests." Such assessments of an asylum applicant's demeanor are afforded substantial deference, particularly where they are supported by specific examples. *See Majidi,* 430 F.3d at 81 n. 1; *see also Li Hua Lin v. U.S. Dep't of Justice,* 453 F.3d 99, 109 (2d Cir.2006).

While the agency's decision is not without error,[3] remand is not warranted here because this Court can confidently predict that the agency would still find that Gegaj was not credible, even absent the erroneous finding. *See Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 338–39 (2d Cir.2006). The omissions and inconsistencies identified above, in addition to the IJ's properly-made demeanor and corroboration findings, provide substantial evidence for the IJ's adverse credibility determination. *See Secaida–Rosales,* 331 F.3d at 307. Because the only evidence that Gegaj was likely to be tortured depended upon his credibility, the adverse credibility determination in this case necessarily precludes success on his claim for CAT relief. *See Xue Hong Yang v. U.S. Dep't of Justice,* 426 F.3d 520, 523 (2d Cir.2005).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, the pending motion for a stay of removal in this petition is DENIED as moot.

---

**3.** In particular, we find error in the BIA's determination that the information provided in Gegaj's statement regarding his arrest in 1991 was inconsistent with his testimony.